IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWN G.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

        Defendant.

Case No. 3:19-cv-01468-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

        Shawn G. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was born in December 1964, making him forty-nine years old on January 5, 2013, the alleged disability onset date. (Tr. 17, 99-100.) Plaintiff graduated from high school. (Tr. 43, 257.) He has past relevant work as a carpenter and as a laborer. (Tr. 28.) In his application, Plaintiff alleges disability due to stage three chronic kidney disease, chronic obstructive pulmonary disease ("COPD"), left ankle and right knee problems, problems in the

hands and shoulders, diabetes, facet joint syndrome, degenerative disc disease, sleep apnea, and obesity. (Tr. 79-80.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on September 28, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 144-45.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on August 24, 2018. (Tr. 38-76.) On October 3, 2018, the ALJ issued a written decision denying Plaintiff's application. (Tr. 17-30.) On July 29, 2019, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the

burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 36-44.) At step one, the ALJ determined that Plaintiff met the insured status requirements for DIB and had not engaged in substantial gainful activity since January 5, 2013, the alleged disability onset date. (Tr. 19.) At step two, the ALJ determined that Plaintiff has the following severe impairments: (1) osteoarthritis of the right knee, (2) "left ankle, and right shoulder acromioclavicular ('AC') joint," (3) rotator cuff syndrome, (4) kidney disease, (5) obesity, and (6) "alcohol abuse." (*Id.*) At step three, the ALJ concluded that Plaintiff does not have an impairment that meets or equals a listed impairment. (Tr. 21.) The ALJ then concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) can frequently climb ramps and stairs; (2) can never climb ladders, ropes, or scaffolds; (3) can occasionally kneel, crouch, and crawl; (4) should avoid concentrated exposure to hazards such as protected heights; (5) cannot reach overhead bilaterally with the upper extremities but can frequently reach in all other directions; and (6) should avoid concentrated exposure to respiratory irritants such as fumes, dusts, gases, and strong odors. (Tr. 21.) At step four, the ALJ concluded that Plaintiff cannot perform any past work. (Tr. 28.) At step five,

PAGE 4 – OPINION AND ORDER

considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the following jobs which exist in significant numbers in the national economy: "collator operator," "office helper," and "inserting machine operator." (Tr. 28-29.) Therefore, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 29.)

## DISCUSSION

Plaintiff argues on appeal that the Commissioner erred by failing to provide: (1) specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; and (2) legally sufficient bases to reject the lay witness testimony. As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence, and therefore the Court affirms the Commissioner's decision.

**I.    PLAINTIFF'S SYMPTOM TESTIMONY**

**A.    Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

The ALJ discounted Plaintiff's symptom testimony as inconsistent with (1) the objective medical evidence of record, which reflected conservative treatment and improvement with treatment, and (2) his activities of daily living. (Tr. 26-27.) There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 26.) The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ met that standard here.

#### 1.    Plaintiff's Symptom Testimony

Plaintiff completed an adult function report as part of the application process, dated February 10, 2016. (Tr. 264-71.) He alleged that daily living had become difficult for him due to ankle and knee limitations which restrict his mobility, as well as functional limitations in the use of his hands. (Tr. 264.) He asserted he has difficulty getting out of bed, cannot stand for long periods of time, has difficulty getting restful sleep due to pain, requires breaks to complete household chores, and requires an ankle splint and sometimes a cane to walk. (Tr. 265-70.)

PAGE 6 – OPINION AND ORDER

Plaintiff provided similar testimony regarding his impairments at the August 24, 2018, hearing. He testified that he has difficulty ascending the stairs in his home. (Tr. 43.) He no longer drives due to multiple DUI convictions. (Tr. 44.) He explained he uses a cane two or three times per month when he is having a "bad day." (*Id.*) He is able to judge whether he is having a bad day when he wakes up and takes his first steps, although it generally takes several hours for his legs to "loosen up" due to pain in his left ankle and right knee. (Tr. 45.) Plaintiff testified he has breathing difficulties and must use an inhaler almost every day, and a nebulizer every other month. (Tr. 49-50.) He explained that he injured his left ankle in an ATV accident in 2000, which required surgery and insertion of screws. (Tr. 50.) His left ankle continues to cause pain and restrict his standing and walking abilities. (Tr. 50-51.) He expressed a fear of undergoing surgery based on bad experiences in the past. (Tr. 51, 55-56.) Plaintiff treats his ankle pain by stretching and icing. (Tr. 52.) He testified he has constant pain in his right knee, on which he had surgery in 2015 which provided only initial relief. (Tr. 52-53, 55.) Plaintiff expressed that his ankle and knee issues prevent him from walking more than two blocks without stopping to regroup, and he can stand for only 10-15 minutes at a time. (Tr. 54-55.) He described bilateral shoulder pain which limits his overhead lifting ability. (Tr. 56, 59.) Plaintiff's pain impairs his ability to sleep restfully. (Tr. 57.)

Plaintiff further testified that he uses a bike with a trailer to go grocery shopping and take his dogs to the park, for a total roundtrip of three or four miles. (Tr. 58, 67-69.) He can lift bags of dog food weighing up to 25 pounds. (Tr. 69-70.) He explained that he can perform household chores including loading the dishwasher, limited vacuuming, laundry (including ascending and descending nine steps), and limited yard work. (Tr. 60.) For enjoyment, Plaintiff plays with his dogs and watches television. (*Id.*) He no longer hunts or fishes but continues to do woodworking

weekly for a couple of hours at a time, although he is limited by pain in his hands. (Tr. 61-62.) Plaintiff occasionally picks strawberries for 20-30 minutes at a time, which involves bending at the waist. (Tr. 62-63.) He does not test his blood sugar regularly despite his diabetes condition. (Tr. 64-65.) Plaintiff rarely takes over-the-counter pain medication and has not sought prescription painkillers for fear of addiction. (Tr. 69.)

### 2. Conflicting Medical Evidence

The ALJ found Plaintiff's allegations regarding his symptom severity and degree of functional limitation inconsistent with the medical evidence as a whole, including Plaintiff's conservative treatment, evidence of improvement, and normal examination findings. (Tr. 26-27.) All are valid reasons to reject a claimant's subjective symptom allegations. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); *see also Romo v. Berryhill*, 731 F. App'x 574, 577-78 (9th Cir. 2018) (holding that "'[i]mpairments that can be controlled effectively with [treatment] are not disabling'" (quoting *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006))); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject his allegations on these grounds because the record "corroborates the degree of limitation alleged." (Pl.'s Br. at 15.) Specifically, he argues that the medical record demonstrates that his back, ankle, and knee symptoms worsened over time. (Pl.'s Br. at 14.) However, for the reasons that follow, the Court finds that the medical record supports the ALJ's findings.

First, the ALJ identified medical evidence showing that Plaintiff's symptoms improved with treatment. Following arthroscopic knee surgery in January 2015, a clinical examination in

PAGE 8 – OPINION AND ORDER

October of that year reported normal gait, station, and strength, as well as improvement in pain control and range of motion. (Tr. 23, 425.) Although Plaintiff injured his knee in a fall near the end of a 14-mile hike in November 2015, his gait, station, and range of motion remained intact at subsequent clinical visits in December 2015 and January 2016. (Tr. 23, 326, 415, 419, 421, 423.) Plaintiff reported on March 28, 2016 that his knee injection had been effective for one month, and his range of motion was unrestricted. (Tr. 24, 554.) The next day, Plaintiff saw another provider for back pain and reported right leg numbness, but had full strength and sensation in both legs. (Tr. 24, 400.) Although Plaintiff reported knee and ankle pain again in June and July 2018, he declined further steroid injections despite their prior effectiveness, and reported improvement following physical therapy by the end of August 2018 (Tr. 26, 618, 622, 627), the most recent medical evidence of record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (finding that the "most recent medical reports are highly probative").

      Second, the ALJ also pointed to substantial evidence of conservative treatment for pain in Plaintiff's lower extremities, despite Plaintiff's complaints of debilitating impairments. (Tr. 23, 25-26, 402, prescribed medication and physical therapy in March 2016; Tr. 413, declined narcotic pain medication in favor of continuing marijuana use in January 2016; Tr. 419, prescribed ibuprofen for pain in January 2016; Tr. 423, prescribed ice and physical therapy for pain; Tr. 554, prescribed "unloader brace" for knee; Tr. 618, Plaintiff indicated physical therapy was helpful and declined injections; prescribed ice, anti-inflammatory medication, and Tylenol for ankle and knee pain in July 2018; Tr. 620, Plaintiff discharged from physical therapy before

completing recommended course in July 2018; Tr. 622, "patient reports feeling better" with physical therapy in August 2018).[2]

Although Plaintiff provides an alternative interpretation of the medical evidence, the ALJ's interpretation of the evidence to discount Plaintiff's testimony regarding the severity of his lower extremity impairments was a rational interpretation of the record and supported by substantial evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))).

### 3. Activities of Daily Living

The ALJ also discounted Plaintiff's symptom testimony as inconsistent with several of his activities of daily living, including his ability to camp for several weeks in 2017 without musculoskeletal complaints at a contemporaneous clinical visit, engage in his woodworking hobby, ride his bike to the grocery store, and lift 25-pound bags of dog food. (Tr. 26.) Plaintiff argues that none of the activities the ALJ identified demonstrate greater functional ability than he alleges, and the Commissioner responds that the ALJ's findings were appropriate and supported by the record.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1163. The ALJ's findings with respect to Plaintiff's activities of daily living are supported by substantial evidence. For example, despite alleging significant limitations in standing and walking, Plaintiff reported in December 2015 that he had just completed a 14-mile walk. (Tr. 23, 326, 421.) He reported that

---

[2] Plaintiff does not argue the ALJ erred in identifying conservative treatment and normal examination findings regarding his shoulder, carpal tunnel, or kidney impairments. (*See* Tr. 23, 26.)

PAGE 10 – OPINION AND ORDER

he was "relatively comfortable" during the walk until he fell and struck his knee. (Tr. 326.) His provider indicated that Plaintiff's knee had been doing well until the fall, and that Plaintiff's ankle did not bother him during or after the walk. (*Id.*) The ALJ identified medical records showing that despite his knee complaints, Plaintiff had normal gait and station, and his pain had improved for a month following an injection. (Tr. 23.) Plaintiff's allegations of an inability to walk more than two blocks without needing to stop, and an inability to stand for more than ten minutes at a time, are inconsistent with his ability to walk long distances comfortably. As such, the ALJ's interpretation of the evidence was rational.

The ALJ also addressed Plaintiff's testimony that he had difficulty writing his name or completing paperwork due to limitations in his hands, and found that despite Plaintiff's complaints, he was able to perform woodworking, ride his bike for several miles roundtrip to the store, and lift 25-pound bags of dog food. (Tr. 26, 58, 61-62, 69-70, 264.) The ALJ also noted that despite an isolated complaint of hand numbness in November 2016, Plaintiff demonstrated full muscle strength and range of motion in his hands, as well as improvement over time and few complaints after 2016. (Tr. 26, 523, 525.) The record evidence cited by the ALJ supports his finding that Plaintiff's activities, in conjunction with his generally conservative treatment and improvement, undermine his complaints regarding the functionality of his hands.

Finally, the ALJ found that Plaintiff's ability to camp for several weeks in June 2017 without musculoskeletal complaints was inconsistent with his allegations of diminished functional ability and pain. (Tr. 26, 516, 519.) Plaintiff argues that he was camping due to homelessness rather than for recreation. (Pl.'s Br. at 16) (citing Tr. 521). Regardless of the reason for camping, it was not inappropriate for the ALJ to find that Plaintiff's ability to camp

for an extended period of time without musculoskeletal complaints suggests that his symptoms are not as debilitating as he alleged.

For all of these reasons, the Court finds that Plaintiff's activities of daily living was a clear and convincing reason for the ALJ to discount his testimony, and was supported by substantial evidence in the record.

## II.     LAY WITNESS TESTIMONY

### A.     Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

### B.     Analysis

Plaintiff argues the ALJ failed to provide germane reasons for rejecting the lay witness testimony provided by his girlfriend and his daughter. (Pl.'s Br. at 17-19.)

In a March 2016 statement, Plaintiff's girlfriend indicated he has difficulty walking long distances (more than "40 steps"), standing, squatting, kneeling, and bending. (Tr. 286-93.) However, she also noted he is able to grocery shop, play with his dogs, and prepares his own meals daily. (Tr. 287-90). Plaintiff's daughter provided a written statement in July 2018. (Tr. 319-21.) She stated that Plaintiff's functional limitations generally stemmed from the ankle injury he suffered in 2000. (Tr. 319.) She indicated his pain had increased since then, while his mobility has decreased. (*Id.*) She reported an incident when Plaintiff had difficulty ascending a set of stairs. (*Id.*) She stated that Plaintiff could not lift more than thirty pounds. (Tr. 319-20.) She described an incident where Plaintiff experienced difficulty completing a short quarter-mile hike due to ankle pain and shortness of breath, which required frequent use of his inhaler. (Tr. 320.) She expressed that Plaintiff had always been a hard worker in the past, but is now significantly limited by limitations in his physical and mental health. (Tr. 320-21.)

The ALJ summarized the lay witness testimony in his written decision, and concluded "the degree of [Plaintiff's] limitation described is inconsistent with the objective medication [sic] evidence." (Tr. 27.) Plaintiff correctly argues the ALJ's sole proffered reason for rejecting the lay testimony is erroneous. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("A lack of support from medical records is not a germane reason to give 'little weight' to those observations."). The Commissioner responds that any error was harmless because the lay testimony was substantially similar to Plaintiff's own testimony, which the ALJ properly discounted. (Def.'s Br. at 7-8.) The Court agrees.

The Ninth Circuit has held that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be

inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012), *superseded by regulation on other grounds*. Here, the lay witnesses' testimony described the same standing and walking limitations that Plaintiff detailed in his own testimony.[3] The ALJ's well-supported reasons for rejecting Plaintiff's testimony apply equally to the lay witness testimony. *See Sievers v. Berryhill*, 734 F. App'x 467, 470-71 (9th Cir. 2018) (holding that the ALJ's error in evaluating lay witness testimony was harmless where the lay witness' "statements described the same limitations as [the claimant]'s own testimony"). Accordingly, the ALJ's error in discounting the lay witness testimony for its inconsistency with the medical evidence was harmless.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

DATED this 7th day of December, 2020.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[3] In addition, Plaintiff's daughter also testified that Plaintiff can lift no more than thirty pounds (Tr. 319-20), but any error in discounting that testimony is immaterial to the ALJ's ultimate non-disability decision because Plaintiff's RFC required only frequent lifting and carrying of ten pounds, and occasional lifting and carrying of twenty pounds.

PAGE 14 – OPINION AND ORDER